IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 13, 2011

## CHARLES WAYNE DALTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lincoln County**
**No. S1000042     Robert Crigler, Judge**

_____

**No. M2011-00949-CCA-R3-PC - Filed May 4, 2012**

_____


Petitioner appeals the Circuit Court for Lincoln County's denial of post-conviction relief. He was convicted of forty-three counts, thirteen counts by a jury trial and thirty counts by guilty pleas. On the date of his scheduled sentencing hearing, petitioner agreed to sentences on the thirteen counts for which the jury convicted him and pled guilty to the remaining thirty counts. He accepted an effective sentence of twenty-five years at 100% for all forty-three counts. On appeal, petitioner alleges that trial counsel made numerous mistakes in preparing for and conducting the trial and did not adequately explain the consequences of his guilty pleas. He further alleges that the post-conviction court abused its discretion by refusing to grant his motion to remove post-conviction counsel. Discerning no error, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

James R. Frazier, Lawrenceburg, Tennessee (on appeal) and Craig S. Moore, Fayetteville, Tennessee (at trial) for the appellant, Charles Wayne Dalton.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Crawford, District Attorney General; Ann L. Filer and Hollynn Eubanks, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural Background

The indictment against petitioner included fourteen counts of theft of property valued at $1,000 or more but less than $10,000, eight counts of theft of property valued at $500 or more but less than $1,000, eleven counts of aggravated burglary, two counts of evading arrest, two counts of aggravated kidnapping, two counts of especially aggravated kidnapping, one count of vandalism, one count of reckless endangerment, one count of driving with a suspended license, and one count of aggravated assault. The trial court severed counts thirty-one through forty-three from the remaining counts, and a jury convicted petitioner of those thirteen counts. The counts for which a jury convicted petitioner included vandalism, evading arrest, reckless endangerment, driving on a suspended license, aggravated assault, aggravated kidnapping, and especially aggravated kidnapping. Petitioner was also convicted by a jury of one count of aggravated burglary and one count of theft.

The trial court set petitioner's sentencing hearing on the counts that were tried for May 5, 2009. On the day of the sentencing hearing, petitioner and the State entered an agreement by which petitioner agreed to plead guilty to the thirty remaining counts and receive a total effective sentence of twenty-five years at 100% for all forty-three counts. As part of the agreement, petitioner waived his right to appeal his conviction for counts thirty-one through forty-three. Petitioner now contends that trial counsel was ineffective for not properly explaining all of the rights that Petitioner waived as a result of the plea agreement.

### A. Guilty Plea Hearing

At the plea acceptance hearing, the trial court instructed petitioner to not answer any question that he did not fully understand. It further instructed petitioner to tell the court if he did not completely hear or did not fully understand anything. Petitioner said that he understood the instructions. Petitioner testified that he was not having any health problems and was not taking any kind of medicine except his "regular mental health medication," which he was taking as prescribed. Petitioner informed the court that he had not consumed any alcohol that day. Petitioner stated that he was thinking clearly and understood what he was doing.

Petitioner could read and write and had made it to the eleventh grade in school. He stated that his attorney read the entire "Petition to Enter a Plea of Guilty" to him before he signed it. Trial counsel agreed and told the court that he read the petition to petitioner verbatim. Petitioner said that there was nothing in the guilty plea agreement that he did not understand or that he wanted explained further.

The trial court reviewed petitioner's rights with him. Petitioner told the court he understood that he did not have to enter a guilty plea. He further understood that he had the right to a jury trial and the right to counsel at all stages of the proceedings. He also understood the State's burden of proof and his right to confront and cross-examine witnesses. In addition, petitioner understood that he had the right to subpoena witnesses and evidence in his favor and that he had the right to choose whether to testify at trial.

At the plea acceptance hearing, the State summarized the factual basis for the pleas as follows:

> [T]his . . . started out with aggravated burglary [outside] of your jurisdiction then went to the chase on from there.
>
> Prior to that Franklin County aggravated burglary there [were] a series of aggravated burglaries here in Lincoln County and thefts that go with those. The details as to the owners of those homes and the property taken are set forth, some of them in the Presentence Report; some of them were omitted. Some are in there. Otherwise if we could just rely on what is in the indictment.

Trial counsel, on behalf of petitioner, agreed to stipulate to the factual basis for the plea.

The trial court explained the elements of the various charges to petitioner. The court also explained the possible ranges of punishment for the offenses to which petitioner was pleading guilty, and petitioner said he understood.

The State set forth the agreed disposition of all forty-three counts of the indictment for the court. In doing so, the State explained that "Counts 39 and 40 are the counts that control the ultimate length of the sentence. They are especially aggravated kidnapping charges, A felonies, as to two different victims." The State further explained that each especially aggravated kidnapping conviction carried a sentence of twenty-five years at 100 % and that petitioner would serve this sentence consecutively to his sentence in Franklin County.

As part of the plea agreement, petitioner agreed to waive his right to appeal the conviction from his jury trial. Petitioner said that he heard the proposed resolution and that it was stated as he had agreed. He also said that trial counsel negotiated the agreement and explained it to him before he signed the petition to enter a guilty plea and the waiver of appeal.

Petitioner told the trial court that he was freely and voluntarily entering his guilty pleas and waiver of appeal. He denied that anyone had promised him anything to plead guilty and

waive his appeal other than the agreement announced to the court. Likewise, he said that no one had threatened him in any way to make him plead guilty and waive his appeal. Petitioner understood that a court could use the convictions to enhance any future punishment, that he was waiving his right to a jury trial and appeal on the untried counts, and that he was waiving the sentencing hearing for his jury trial convictions. He further understood that he was agreeing for the court to sentence him according to the plea agreement and that he was waiving his right to appeal all of the convictions encompassed by the plea agreement.

Petitioner told the trial court that he did not have any complaints about how trial counsel represented him. He denied that he had any difficulty communicating with trial counsel about his case and said that he could talk with trial counsel all that he wanted when deciding whether to plead guilty. He said that trial counsel could not have done anything more to research or investigate his case. He agreed that the jail credit announced by the prosecution was accurate. Petitioner did not have any questions for the court.

The trial court found that petitioner was competent to enter the pleas. The court further found that petitioner was freely and voluntarily pleading guilty. The trial court accepted petitioner's guilty pleas.

On April 21, 2010, petitioner filed a pro se petition for post-conviction relief. The post-conviction court appointed counsel, who filed an amended petition. Counsel originally appointed by the court filed a motion to withdraw because of a change in employment, and the court appointed new post-conviction counsel. Petitioner filed a pro se motion to remove the new post-conviction counsel on November 18, 2010. The court denied petitioner's motion to dismiss post-conviction counsel at the January 27, 2011 post-conviction hearing.

B. Post-Conviction Hearing

*Petitioner's Testimony*

Petitioner testified at the post-conviction hearing that the trial court appointed trial counsel to represent him on the forty-three counts that he was facing. Petitioner stated that he met with trial counsel three times in jail but could not remember how often they met in court. He said that he and trial counsel met for no more than ten hours during his whole case. Trial counsel gave petitioner the discovery materials and reviewed them with him.

Petitioner said that he wanted to raise an issue about the kidnapping charges at trial. Petitioner "felt that [he] didn't kidnap anyone." He denied that trial counsel discussed each charge and the possible sentencing range for each charge with him. Before his trial, the State

offered petitioner a seventy-four-year sentence at thirty percent in exchange for his guilty pleas. Trial counsel advised petitioner not to accept the offer.

Petitioner and trial counsel discussed obtaining a mental evaluation of petitioner. According to petitioner, trial counsel told him that he "had to be borderline mentally retarded before it would make any difference, so there was no need in having a mental evaluation." Petitioner said that he had been in and out of mental hospitals since he was a teenager. Middle Tennessee Mental Health Institute had released petitioner five weeks before the offenses in this case. Petitioner believed that trial counsel should have asked the court for a mental evaluation.

Trial counsel filed a motion to suppress petitioner's written statement to authorities, which the trial court denied. Trial counsel did not seek an interlocutory appeal. Petitioner said that trial counsel should have filed for an interlocutory appeal because "if the jury hadn't heard that statement that [he] gave, it could have affected [the outcome of his trial.]"

Petitioner said that he was not satisfied that trial counsel effectively represented him. He stated that the preliminary hearing transcripts said that he went into the victim's home and asked to use the phone. However, in closing arguments the prosecutor said that he "went in and took the phone from the people and held them hostage." Petitioner said that trial counsel's failure to object to the prosecutor's statements dissatisfied him.

Petitioner filed a motion to dismiss trial counsel as his attorney and had another attorney who was prepared to take over his case. Trial counsel also filed a motion to withdraw. The trial court denied the motions. Petitioner explained that the trial court denied the motions because his prospective new attorney could not be present for the first scheduled day of trial, and the court would not reset the trial date. Petitioner said that trial counsel should have filed for an interlocutory appeal when the court denied trial counsel's motion to withdraw as counsel.

Trial counsel filed a motion to dismiss the kidnapping convictions, which the court was set to hear on May 5, 2009. Petitioner said that the State presented him with a plea offer on May 5, 2009, and instead of going forward with the motion, petitioner accepted the plea offer. He said that he thought about the plea agreement for approximately five hours. The prosecutor told him to take his time and to tell her if he needed more time. Petitioner's mother was upset and crying, and trial counsel told her that if petitioner did not take the plea agreement, the State would put him in prison for the rest of his life. Petitioner felt that "[he] was pressured into taking the plea agreement because [trial counsel] had [his] mother back there and told her they were going to put [him] in prison for the rest of [his] life and had her crying." He stated that his mother begged him to take the plea agreement. Petitioner said that

he was confused and nervous but that he decided to take the plea agreement and sign the waiver of appeal. Petitioner further said that he did not understand what he was giving up when he signed the waiver of appeal.

Petitioner thought that he could still appeal the kidnapping convictions because the motion to dismiss was still pending with the court. He did not understand that he was waiving his right to appeal the kidnapping charges and said those were the only charges with which he was really concerned. Petitioner said that he would not have accepted the agreement if he had been given the opportunity to talk with trial counsel about the plea agreement, to "sleep on" his decision, and discuss it with trial counsel a couple of days later. Petitioner still wanted to appeal his kidnapping convictions and other issues. He wanted the post-conviction court to set aside his convictions and grant him a new trial or delayed appeal.

Petitioner did not realize that trial counsel told his mother that he would receive fifty to sixty years for the burglaries alone. He also did not realize that he "signed the rest of his life away" when he agreed to the twenty-five-year sentence at 100%. Petitioner had pending charges in Alabama and said that he was unaware that pleading guilty in this case subjected him to life imprisonment as a career offender in Alabama. He said that he asked trial counsel about his pending charges in Alabama, and trial counsel said, "You have so much here, I wouldn't worry about them."

On cross-examination, petitioner testified that he had prior convictions for aggravated burglary, several driving offenses, evading arrest, multiple thefts of property, failure to obey a court order, criminal simulation, unlawful drug paraphernalia, passing worthless checks, and aggravated assault. Petitioner had three cases pending in Marshall County and one case pending in Franklin County at the time of this case. Before trial counsel began representing him, petitioner had two other attorneys who withdrew from his case. Petitioner said that he had a conflict with the public defender's office, so the general sessions court appointed trial counsel, who was a private attorney, to his case.

Petitioner recalled that the general sessions court appointed trial counsel before his preliminary hearing and that trial counsel represented him at that hearing. At the preliminary hearing, trial counsel heard the testimony of the State's witnesses and cross-examined them. Trial counsel called Tennessee Bureau of Investigation Agent Gene Stegall as a defense witness. Petitioner agreed that trial counsel introduced exhibits at the hearing and that the hearing was "fairly lengthy." When the grand jury indicted petitioner, the circuit court appointed trial counsel to continue to represent petitioner. Trial counsel filed a motion for a transcript of the preliminary hearing, which the court granted. Petitioner said that he had a copy of the transcript of the preliminary hearing.

Petitioner agreed that he did not express any dissatisfaction with trial counsel when the circuit court appointed trial counsel to his case. Petitioner met with trial counsel a few times before he was transferred to the Tennessee Department of Correction. After they transferred him, he only saw trial counsel at court. He said that the Tennessee Department of Correction brought him to the Lincoln County jail a week before his trial and that trial counsel met with him there the night before his trial.

Trial counsel sent a letter to petitioner outlining each count of the indictment, what the charge was for each count, a description of the facts underlying the charge, and the classification of each offense. Trial counsel also sent copies of statutes that applied to each charge. Petitioner said that he read the entire letter and went over it with trial counsel. Petitioner stated that he dropped out of high school in the ninth grade. However, he agreed that he told the presentence officer that the last grade that he completed was the tenth grade and that he testified during the preliminary hearing that he had an eleventh grade education. He said that he could read and write well enough to understand the letter that trial counsel sent to him. Petitioner agreed that trial counsel discussed with him the elements of each crime and the punishment for each crime. Trial counsel told him that especially aggravated kidnapping was a crime with a 100% release eligibility date.

Petitioner was unhappy with trial counsel because petitioner felt that he did not kidnap the victims. Petitioner did not understand the elements of kidnapping before the jury convicted him. He said that he "always thought when you say you kidnap somebody, you grab them by the hair of the head with a knife or . . . hold them hostage." Petitioner said that trial counsel explained kidnapping to him, "but [he] just couldn't understand what they were talking about, interfering substantially with somebody's liberty and the elements . . . that [go] along with it." Petitioner "thought that kidnapping was when you hold somebody for ransom or hold them [at] gunpoint or something like that." He said that he did not understand the offense until after he started researching it at the law library.

Trial counsel filed a motion for change of venue, a motion to suppress petitioner's written statement, and a motion to sever the offenses. Trial counsel also filed a motion to exclude petitioner's oral statement in which petitioner stated that he committed the crimes because of his drug habit. The State agreed not to use that statement. Petitioner agreed that trial counsel cross-examined the State's witnesses at trial, made objections, and made arguments. Petitioner sent letters to trial counsel thanking him for the hard work that he had done for him. After trial, petitioner expressed to trial counsel his satisfaction with trial counsel's performance.

-7-

Petitioner researched the *Anthony*[1] and *Dixon*[2] cases as they related to merging the aggravated kidnapping charges. He stated that he understood that the facts of each individual case would determine whether *Anthony* applied to the case and that the court had to hear the facts before it could rule on the motion. Petitioner agreed that the only logical time to pursue an *Anthony* motion was after the trial. Trial counsel filed an *Anthony* motion, and the court was set to hear the motion on May 5, 2009, which was the date of petitioner's sentencing hearing.

Petitioner was aware that, before his sentencing hearing, trial counsel and the State had discussed a possible settlement for the convictions and pending offenses. Petitioner pled guilty to the remaining charges and accepted the agreed sentences. He remembered the court placing him under oath at the hearing and his swearing to tell the truth. He also remembered the trial court telling him that it needed to be sure that he understood what he was doing, that he understood his rights, and that there was a sufficient factual basis to accept the pleas. Petitioner agreed that the guilty plea transcript accurately reflected what happened during the guilty plea hearing. He stated, however, that he was "highly confused" that day. Petitioner said, "At the time I didn't really understand what I understand now about the waiver of appeal."

Petitioner said that he signed the wavier of appeal because trial counsel advised him to do so. Petitioner was aware that trial counsel had filed a motion to dismiss the kidnapping charges that the court never heard. Petitioner agreed that he had every opportunity to tell the court that he thought the court would still hold a hearing on the motion.

*Trial Counsel's Testimony*

Trial counsel testified that he met with petitioner in person twice while his case was pending in general sessions court. During those meetings he discussed the charges against

---

[1] *See State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991) (holding that dual convictions for armed robbery and aggravated kidnapping violated the due process guarantees of article I, section 8 of the Tennessee Constitution when the confinement, movement, or detention of the kidnapping were "essentially incidental" to the robbery) *overruled by State v. Jason Lee White*, No. M2009–00941–SC–R11–CD, 2012 WL 758916, at *15 (Tenn. Mar. 9, 2012).

[2] *See State v. Dixon*, 957 S.W.2d 532, 534 (Tenn. 1997) ("The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the . . . robbery.") *overruled by State v. Jason Lee White*, No. M2009–00941–SC–R11–CD, 2012 WL 758916, at *15 (Tenn. Mar. 9, 2012).

petitioner, including what the State had to prove. They also discussed possible witnesses and defenses. Trial counsel said that he had many opportunities to meet with petitioner and discuss the case.

Trial counsel identified a transcript of the preliminary hearing and confirmed that it appeared to be a true and accurate copy of the proceedings. Trial counsel stated that he cross-examined the State's witnesses and called a witness for petitioner. Trial counsel also interviewed the State's witnesses. He said that after the preliminary hearing, petitioner and petitioner's mother told him that they wanted him to continue to represent petitioner in circuit court.

After the grand jury indicted petitioner, the circuit court appointed trial counsel to continue to represent petitioner. Trial counsel requested discovery and reviewed it with petitioner. Trial counsel filed a motion for change of venue, a motion to sever, and two motions to suppress. In support of the motion for change of venue, trial counsel presented the court with "tapes of telecasts, broadcasts, and . . . a copy of a newspaper article." One motion to suppress pertained to petitioner's written statement and the other involved petitioner's oral statement. Trial counsel stated that the hearing was lengthy and that he vigorously cross-examined the State's witnesses. The State agreed with trial counsel's motion to sever and agreed not to introduce petitioner's oral statement.

During the pendency of the proceedings, trial counsel had multiple meetings with petitioner in person and said that he talked with him by telephone at least twice. Trial counsel had multiple conversations with petitioner's mother as well. Trial counsel also recalled writing at least two letters to petitioner. He further recalled that one of the letters to petitioner included a chart with each count, the charges and facts associated with the count, the classification of the offense, and the potential range of punishment for each count. Trial counsel believed that petitioner understood the charges against him. He said that although he explained the kidnapping counts to petitioner, petitioner disagreed that the kidnapping charges applied to his case. Trial counsel testified that he advised petitioner that they could argue to the jury that petitioner's conduct in this case should not be considered kidnapping; however, the jury could find him guilty under the language of the statute. Trial counsel told petitioner that he intended to file an *Anthony* motion, and trial counsel filed the motion approximately two weeks after trial. He filed it after trial because the basis for the motion was very fact specific and depended on the facts of the case as they developed at trial. In addition, the jury could have acquitted petitioner on the kidnapping charge, making the motion unnecessary.

Trial counsel spoke with the attorneys who represented petitioner in his criminal matters that were pending in Franklin County and Marshall County. He said that he discussed the charges for which they were representing petitioner and how convictions in the other cases

would affect his sentencing range in this case. Trial counsel discussed petitioner's mental health with the attorney who represented him in Franklin County. While this case was pending in general sessions court, trial counsel and petitioner discussed whether petitioner could use his mental state and mental condition as a defense. He stated that rather than have the evaluation done in two different counties, they had it done in Franklin County. The evaluation results indicated that petitioner was competent to stand trial.

According to trial counsel, every conversation between him and petitioner was clear. He said petitioner was "very savvy" about criminal procedures and criminal law. Petitioner researched case law on his own, found cases, and discussed them with trial counsel.

Trial counsel and the State had many settlement conferences. Trial counsel conveyed settlement offers to petitioner, but they were unable to settle the case before trial. The court set the case for trial; however, trial counsel and the State continued to discuss settlement even as the trial date approached. Shortly before the trial date, trial counsel filed a motion to withdraw in response to petitioner's motion asking the court to remove trial counsel from his case. Trial counsel said that he did not want the court to remove him from the case. However, petitioner said that he wished for another attorney to represent him. Trial counsel did not have a problem with the other attorney representing petitioner, so he filed his motion to withdraw in agreement. The trial court would not allow trial counsel to withdraw from representing petitioner.

Trial counsel stated that he never stopped working on petitioner's behalf. Before trial, petitioner sent trial counsel two letters thanking him for the job that he was doing. Trial counsel testified that he conducted petitioner's trial to the best of his ability, cross-examined witnesses, made objections when warranted, and argued zealously on behalf of petitioner. Trial counsel said that after the jury returned its verdicts of guilty, petitioner thanked him for his hard work and said that trial counsel had done a good job.

The trial court set petitioner's case for sentencing, and trial counsel said that he and the State had settlement discussions up to the day of the sentencing hearing. Trial counsel did not recall any post-trial discussions with petitioner other than speaking with him the day of the sentencing hearing. He and petitioner discussed the State's offer for many hours before petitioner decided to accept the settlement offer. The settlement offer included a waiver of appeal of the jury verdicts. Trial counsel prepared a handwritten waiver of appeal document. Petitioner executed the waiver of appeal document after discussing it with trial counsel. Trial counsel believed that petitioner understood the waiver and what he had told petitioner.

Trial counsel represented petitioner during the plea submission hearing and was available to petitioner. He said that they discussed the waiver of appeal during the hearing

and that petitioner went forward with the agreement without hesitation. Petitioner did not express any reservations or a desire to change his mind about the plea on the day of the sentencing hearing.

On cross-examination, trial counsel testified that he was aware that petitioner had been a patient at Middle Tennessee Mental Health Institute but was unsure whether petitioner was an inpatient or outpatient. Trial counsel said that he felt petitioner understood what he was giving up when signing the waiver of appeal because petitioner had researched criminal procedure and criminal law on his own. They had also discussed that the *Anthony* motion trial counsel had filed would be irrelevant because the settlement would close all issues. Trial counsel said that he discussed the merits and probability of the *Anthony* motion with petitioner and told him that "it was a good-faith argument that [they] could make; that [they] may or may not win . . . ."

After hearing the evidence, the post-conviction court took the matter under advisement. On March 18, 2011, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court found that petitioner failed to prove that trial counsel's performance was deficient and failed to show that the allegedly deficient performance prejudiced him. The post-conviction court further found that petitioner's decision to accept the State's offer of a twenty-five-year effective sentence in exchange for his guilty pleas and waiver of appeal was both knowing and voluntary. In its order, the post-conviction court explained that it denied petitioner's motion to dismiss counsel because it found that the motion was without merit and was an attempt to continue the matter. Petitioner timely appealed the denial of post-conviction relief.

## II. Analysis

Petitioner first argues that the post-conviction court abused its discretion when it denied his motion to remove post-conviction counsel. Petitioner asks this court to set aside the post-conviction court's judgment and grant him a new hearing based on this alleged abuse of discretion. As petitioner acknowledges, "there is no constitutional entitlement to the effective assistance of counsel in a post-conviction proceeding." *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). Petitioner claims, however, that post-conviction counsel did not fulfill his duties of interviewing relevant witnesses and diligently representing and presenting all reasonable claims. Thus, post-conviction counsel should have been removed. *See* Tenn. Sup. Ct. R. 28 §6(C)(2). Petitioner also asserts that post-conviction counsel should have subpoenaed a witness who petitioner wanted to testify at his hearing and that post-conviction counsel did not amend his petition to include a particular issue.

While there is no constitutional entitlement for effective post-conviction counsel, our legislature has afforded a statutory right to counsel in post-conviction cases. *See* Tenn. Code Ann. § 40-30-107(b)(1) (2006). In a post-conviction proceeding,

> [a]ppointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

*Leslie v. State*, 36 S.W.3d 34, 38 (Tenn. 2000) (quoting Tenn. Sup. Ct. R. 28 §6(C)(2)). Furthermore, post-conviction counsel must consult with the petitioner where feasible. *Id*. However, post-conviction counsel has the right to use his or her professional judgment to make strategic and tactical decisions, including deciding which issues are reasonable and should be raised. *Id.* Post-conviction counsel has no obligation to comply with a petitioner's demands to investigate or pursue unreasonable or frivolous claims. *Id.*

Post-conviction counsel stated that he read the transcripts, the petition for post-conviction relief, reviewed the court file, and visited petitioner in preparation for the post-conviction proceedings. Petitioner and post-conviction counsel reviewed the petition and all of the issues. Post-conviction counsel stated that he complied with the standard required of him. In denying petitioner's request to remove post-conviction counsel, the court noted that it had a duty to timely dispose of post-conviction cases. "[A] petitioner's unreasonable demands do not alone prevent an attorney from meeting his or her professional responsibilities. Were we to conclude otherwise, a petitioner potentially could manipulate the post-conviction process and create interminable delay by repeatedly seeking new counsel." *Leslie*, 36 S.W.3d at 39. Accordingly, we conclude that the post-conviction court did not abuse its discretion by denying petitioner's motion, and petitioner is not entitled to relief on this issue.

Next, petitioner argues that trial counsel was deficient for "not making clear the effect that accepting the plea agreement[,] which also waived his right to appeal those issues which were believed erroneously decided by the Court, would forever bar raising those issues again." Petitioner asserts that he did not have a chance to calmly reflect on the terms of the agreement, and his mental status caused him to break down and accept the State's offer.

To succeed on a post-conviction claim, a petitioner must prove the allegations set forth in his or her petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, we are required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453,

461 (Tenn. 1999).  We review the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, *de novo* with a presumption that the findings are correct.  *Id*.  Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness.  *Fields v. State*, 40 S.W.3d 450, 457–58 (Tenn. 2001).

To establish the ineffective assistance of counsel, petitioner bears the burden of proving that counsel's performance was deficient and that the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004).  If counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards, then deficient performance is shown.  *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases).  A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).  Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation.  *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).  The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel.  *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).  Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  Both deficient performance and prejudice must be established to prove ineffective assistance of counsel.  *Id*. at 697; *see also Goad*, 938 S.W.2d at 370.  In the context of a guilty plea, to satisfy the second prong of *Strickland*, petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).  If either element of ineffective assistance of counsel has not been established, a court need not address the other element.  *Strickland*, 466 U.S. at 697.

The post-conviction court found that trial counsel had prepared for petitioner's case, including meeting with petitioner and obtaining discovery.  Trial counsel investigated petitioner's charges in other counties and discovered that a mental evaluation showed that petitioner was competent to stand trial.  Trial counsel attempted to negotiate a settlement with the State throughout his representation.  Trial counsel's testimony, which the post-conviction court clearly accredited, was that he discussed the evidence and charges with petitioner.

Petitioner primarily complains that trial counsel did not adequately explain the waiver of appeal and says that trial counsel pressured him to take the agreement and waive his right to appeal. Even on appeal, petitioner maintains that he did not kidnap anyone. Counsel testified that the *Anthony* motion had merit but was not a "sure thing." On the day of the *Anthony* motion hearing and sentencing hearing, the State offered petitioner the opportunity to settle the thirty remaining counts of the indictment along with the jury trial convictions by petitioner's pleading guilty and waiving his right to appeal. The post-conviction court found that petitioner thought about whether to take the State's offer for five hours. The court further found that the only person who pressured petitioner into taking the offer was petitioner's mother. Petitioner admitted that trial counsel and the State told him to take his time in considering the offer. The post-conviction court found that neither trial counsel nor the State threatened or coerced petitioner into accepting the offer. Likewise, no one promised anything, outside of what was in the agreement, in exchange for his plea. The post-conviction court found that petitioner's contention that he thought he could still appeal the kidnapping was untrue. The evidence does not preponderate against the post-conviction court's findings.

Petitioner raises the issue of whether his guilty pleas were knowing and voluntary. Petitioner testified that he was highly confused when he accepted the offer and did not understand the effect of the waiver of appeal. On appeal, petitioner alleges that trial counsel did not make clear to him that by accepting the plea agreement he waived the right to appeal. He further complains that he did not know that part of accepting the guilty pleas and agreed sentences included a waiver of the right to appeal the kidnapping convictions. The post-conviction court found that petitioner fully understood what he was doing when he accepted the offer of the agreed sentences, pled guilty to the remaining counts, and waived his right to appeal.

A plea is involuntary if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine whether the guilty plea is "knowing" by questioning the defendant to make sure the defendant fully understands the plea and its consequences. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999); *Blankenship*, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at many circumstantial factors in making this determination. *Blankenship*, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id*. at 904–05.

The record shows that the defendant is knowledgeable about legal proceedings and conducted his own legal research outside of what trial counsel was doing. Trial counsel represented petitioner and conferred with him several times to discuss the case. Trial counsel and the court informed petitioner about the consequences of his plea including the waiver of appeal and the sentences. Petitioner was facing a trial on the thirty counts and potential sentences of far greater than twenty-five years if convicted. The evidence does not preponderate against the post-conviction court's finding that petitioner's plea and waiver was knowing and voluntary. Petitioner is not entitled to relief.

## III. Conclusion

The record supports the post-conviction court's determination that petitioner failed to prove by clear and convincing evidence that he did not receive effective assistant of counsel. Therefore, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE